UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFREY J. W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 3:20-cv-00077-GCS[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

PROCEDURAL HISTORY

Plaintiff applied for disability benefits in May 2013 alleging disability as of April 30, 2013. Plaintiff was found not disabled and never had a hearing. Plaintiff later filed a new application for disability benefits in March 2016 alleging disability as of April 30, 2013. After an initial denial and upon reconsideration in January 2017, Plaintiff was found disabled by the State agency as of May 28, 2015[3], when he turned 55 years old. (Tr.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). *See* (Doc. 8 & 10).

[3] Plaintiff reported his birthday as May 29, 1960, at Tr. 232 and 42. The ALJ indicated Plaintiff's birthday as May 28, 1960, at Tr. 15. For the sake of consistency, the Court will use May 28, 1960, while

15).

Plaintiff then disagreed with the date he was found disabled. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") decided Plaintiff was not disabled prior to May 28, 2015, but became disabled on that date and has continued to be disabled through the date of that decision on November 27, 2018. (Tr. 15-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

### ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. The ALJ erred by failing to find Plaintiff was disabled because the jobs identified by the vocational expert ("VE") required interaction with supervisors during the learning and probationary period in excess of Plaintiff's residual functional capacity ("RFC").

2. If it is found the ALJ erred with respect to Issue Number 1, the Court should direct the Commissioner to award benefits.

### APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

---

acknowledging that there is a discrepancy.

months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed?; (2) Does the plaintiff have a severe impairment?; (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) Is the plaintiff unable to perform his former occupation?; and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which the plaintiff can perform. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2018.

The ALJ found that, since the alleged onset date of disability, Plaintiff had the severe impairments of moderate lumbar spondylosis; obesity; history of coronary artery disease with stenting in 2005; hypertension; mild sinus tachycardia; obstructive sleep apnea; major depressive disorder; and generalized anxiety disorder.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to do the following:

> Lift/carry/push/pull 20 pounds occasionally, 10 pounds frequently and sit/stand/walk 6 out of 8 hours. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolding. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to extreme cold or heat. The claimant should avoid concentrated exposure to work at unprotected heights, around dangerous, moving machinery or the operation of motor vehicles as part of his job duties. The claimant can perform the basic mental demands of unskilled work. On a sustained basis, he can understand, remember, and carry out

>   simple instructions. He can respond appropriately to co-workers and usual work situations. He can occasionally interact with supervisors. He can deal with changes in a routine work setting.

(Tr. 20).

Based on the testimony of a VE, the ALJ concluded that since April 30, 2013, the alleged onset date, Plaintiff was unable to perform any past relevant work. The ALJ said Plaintiff was an individual closely approaching advanced age prior to the established disability onset date, but his age category changed to an individual of advanced age on May 28, 2015. The ALJ said prior to May 28, 2015, the date the claimant's age category changed, "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills." (Tr. 28). The ALJ said prior to May 28, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Beginning May 28, 2015, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform.

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

   1.   **Agency Forms**

Plaintiff was born in 1960 and turned 55 years old on May 28, 2015, the date Plaintiff's age category changed to advanced age. (Tr. 232). Plaintiff said he stopped

working in 2013 because of his conditions. He worked as a journeyman boilermaker from January 1999 to April 2013. (Tr. 243-244).

In a Function Report submitted in April 2016, Plaintiff said he has two to three bad days per week where his anxiety and depression are at their worst, and he avoids leaving the house on those days. Plaintiff said he does not bathe daily due to depression. Plaintiff said he needs reminders for personal needs, grooming, and taking medicine. Plaintiff said he can go out alone, but he has a hard time driving sometimes due to concentration issues and anxiety. Plaintiff said he cannot spend long periods in a store due to anxiety, and his mind wanders off track from depression and anxiety. (Tr. 266-269). Plaintiff said his ability to deal with people is not as good as it used to be. Plaintiff said his impairments affect his memory, task completion, concentration, understanding, his ability to follow instructions, and his ability to get along with others. Plaintiff said his anxiety and depression affect his ability to get along with authority figures, handle stress, and handle changes in routines. (Tr. 271-272).

### 2. Evidentiary Hearing

An attorney represented Plaintiff at the evidentiary hearing in July 2018. (Tr. 39). Plaintiff testified as to his mind getting in the way of his ability to work. He said he heard voices telling him to jump off a sixty-foot catwalk, so he took himself to a mental hospital. (Tr. 46). Plaintiff said he could not stand certain mental health medications, and his memory is bad because the medicine affects his mind. Plaintiff said part of the reason he could not work is because he would cry all the time. (Tr. 48-49). Plaintiff said he cannot be around and is uncomfortable around a bunch of people. (Tr. 51). On bad days,

Plaintiff did not leave the house and would not wash himself. Plaintiff said he went to the grocery stores at night to avoid people. (Tr. 53-54). Plaintiff said his house would be a wreck during that time period. Plaintiff said he would sit in a chair at home, cry, watch television, and his weight fluctuated. Plaintiff said he got PTSD from being stabbed multiple times in 1990. (Tr. 57-59).

A VE testified that a person with Plaintiff's RFC could not perform their past work. The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings. The VE said there were other jobs that exist in the national economy that a person like Plaintiff could do such as small product assembler positions, packager positions, and sorter positions. The ALJ asked the VE if he were to restrict the individual to only occasional interaction with supervisors, would that have any effect on the ability to perform those jobs. (Tr. 63). The VE said, ". . . it would not have any effect on his ability to perform these jobs following the initial learning period or probationary period." (Tr. 64). The VE said the initial learning period might last from zero to thirty days, "although some employers require a probationary period of up to 90 days." (Tr. 64). The VE said an employee cannot usually miss any work during the probationary period. (Tr. 67). The VE said there typically is more than occasional interaction with supervisors during a probationary period because, "the supervisor is usually training that worker, monitoring their performance on the job, their productivity, whether they're performing the job accurately, so there's going to be more interaction with the supervisor . . ." (Tr. 68-69).

### 3.     **Relevant Medical Records**

The relevant limitation includes Plaintiff's occasional contact with supervisors, and Plaintiff is not challenging the RFC. For those reasons, and in view of the narrow issue that Plaintiff raised, it is not necessary to discuss the medical records.

## ANALYSIS

For Plaintiff's first issue, Plaintiff argues that the ALJ erred by failing to find Plaintiff was disabled because the jobs identified by the VE required interaction with supervisors during the learning and probationary period in excess of Plaintiff's RFC. Plaintiff argues that, although the VE identified jobs Plaintiff could technically perform, the fact that Plaintiff was limited to only occasional interaction with supervisors hinders his ability to perform those jobs due to the probationary or learning period jobs require at the start of the position.

Both Plaintiff and Defendant presented no on-point case law regarding this narrow issue. Research by the Court coupled with the lack of case law from Plaintiff and Defendant leaves the Court to rely solely on the regulations.

This issue only concerns step five of the disability analysis. As said above, the step five question is whether Plaintiff is unable to perform any other work. *See* 20 C.F.R. § 404.1520. The Commissioner has the burden of showing Plaintiff can do the other work. "(2) In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that

demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." 20 C.F.R. § 404.1560.

At the evidentiary hearing, as stated above, the VE said a person with Plaintiff's abilities and limitations could do jobs such as small product assembler positions, packager positions, and sorter positions. Regarding Plaintiff being limited to only occasional interaction with supervisors, the VE said, " . . . it would not have any effect on his ability to perform these jobs following the initial learning period or probationary period." (Tr. 64). The VE said the initial learning period might last from zero to thirty days, "although some employers require a probationary period of up to 90 days." (Tr. 64). The VE said there typically is more than occasional interaction with supervisors during a probationary period because, "the supervisor is usually training that worker, monitoring their performance on the job, their productivity, whether they're performing the job accurately, so there's going to be more interaction with the supervisor . . ." (Tr. 68-69). This testimony by the VE is what Plaintiff's main argument rests on.

Defendant argues that learning and probationary periods should not be considered at step five of the ALJ's decision. (Doc. 24, p. 1). Defendant believes Plaintiff's argument ignores "both the letter and spirit of the Act, as well as its implementing regulations and rulings." (Doc. 24, p. 4). Furthermore, Defendant considers a probationary or learning period as a hiring practice of employers and argues that the regulations say the Commissioner will not consider hiring practices at step five. (Doc. 24, p. 8). Defendant's argument misses the mark. Probationary or learning periods happen

after the individual is hired.  These probationary or learning periods are what dictate whether the individual *keeps* the job they have already been hired to do.  Therefore, this argument fails.

Defendant heavily focuses on the difference between an ability to "do" the jobs and an ability to "obtain" the jobs.  (Doc. 24, p. 5-6).  However, Defendant's argument is flawed.  It is hard to say Plaintiff can do the job if the job requires the probationary or learning period in order to maintain the job.  It is common knowledge that probationary or learning periods require interaction with supervisory individuals as the new employee is both learning and being observed during this stage.  Therefore, if an ability to "do" the job must require a probationary or learning period, and if Plaintiff has a restriction to only occasional interaction with supervisors, and if probationary or learning periods require heavy interaction with supervisors per the very nature of those periods, then it cannot be assumed that Plaintiff would be able to do that job.

In sum, it is the Commissioner's burden to show Plaintiff can do the job or jobs.  If Plaintiff cannot get through the probationary or learning period per the RFC's supervisor-interaction limitations, and probationary or learning periods are a gateway to further performance of the job, then it cannot be said that Plaintiff can "do" the job.  The Court agrees with Plaintiff that, "[s]imply because the interaction with supervisors will abate at some time in the future does not eliminate the fact that the degree of interaction from the outset of employment exceeds [Plaintiff's] RFC."  (Doc. 18-1, p. 11).  Therefore, remand is required regarding Plaintiff's first issue.

As to his second issue, Plaintiff asks the Court to award benefits after success on

his first issue. The Court must refuse that request. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). This is not the "extraordinary" case where the record can lead to only one supportable conclusion, as in *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020).

This Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

**IT IS SO ORDERED.**

Dated: November 4, 2020.

Digitally signed by Judge Sison 2
Date: 2020.11.04 14:45:41 -06'00'

GILBERT C. SISON
United States Magistrate Judge